IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| MARK FAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 1:17-cv-319 (AJT/JFA) |
| | ) | |
| BANK OF AMERICA, N.A., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Pending before the Court are Defendant Green Tree Servicing LLC n/k/a Ditech Financial LLC's ("Ditech") Motion to Dismiss [Doc. No. 19] and Defendant Bank of America, N.A.'s ("BANA") Motion to Dismiss Plaintiff's First Amended Complaint [Doc. No. 25] (collectively, the "Motions"). At an April 14, 2017 hearing, *pro se* Plaintiff Mark Fam ("Plaintiff") requested the opportunity to file supplemental briefing on the Motions. The same day, the Court ordered that Plaintiff file any supplemental briefing within five days of the Magistrate Judge's ruling on Plaintiff's Motion for Default Judgment [Doc. No. 41]. On May 15, 2017, the Magistrate Judge denied Plaintiff's Motion for Default Judgment [Doc. No. 42]. Plaintiff has filed no supplemental briefing. For the reasons stated below, the Motions are GRANTED and this action will be DISMISSED.

## I. BACKGROUND

**A. Factual Allegations**

The following facts are alleged in Plaintiff's First Amended Complaint and taken as true for the purpose of the Motions:

Plaintiff refinanced and replaced a prior loan on his residence at 219 Aspen Street, Alexandria, Virginia (the "Property") by borrowing $316,000 (the "Loan") from BANA in a transaction that closed on March 18, 2012 (the "Loan Closing"). First Am. Compl. ¶ 1. The Loan "replaced (paid off) [sic] existing BANA mortgage refinance loan" and "served to refinance an existing BANA mortgage loan." *Id.* It "included an 'advance' . . . costs, fees, points, and produced a new security instrument which was to be recorded" on the Property deed. *Id.* Plaintiff was not given any copies of documents to retain after signing the closing documents. *Id.* ¶ 4. Specifically, he was not given a written notice of his right to rescind the transaction within three business days. *Id.*

In April 2013, Plaintiff left his employment due to medical issues. *Id.* ¶ 22. Around April 2013, Plaintiff contacted BANA to inquire about potential mortgage relief options. *Id.* ¶ 17. At this time, Plaintiff was current in his mortgage payments. *Id.* ¶ 20. On May 7, 2013, Plaintiff spoke with a BANA employee named Daniel Whitehead about a forbearance agreement, during which they discussed the terms of such an agreement. *Id.* ¶ 24. The next day, Plaintiff and Whitehead had another call in which they again discussed the terms of the agreement, including that a $425 monthly payment would be required during the forbearance, and Whitehead told Plaintiff that he would be the contact person for the forbearance and oversee it. *Id.* ¶ 27-29. On May 17, 2017, Whitehead emailed Plaintiff a copy of the forbearance agreement, dated May 10, 2013, and Plaintiff received a hard copy on May 18, 2013. *Id.* ¶ 30. In June and July 2013, BANA sent Plaintiff notices contending that the forbearance agreement was in default and requiring payments immediately. *Id.* ¶¶ 36-42. In October 2013, Plaintiff sought to extend the forbearance agreement by six months. Around October 23, 2013, Plaintiff learned that Fannie Mae was required to approve an additional six month forbearance extension.

2

*Id.* ¶¶ 65-66. On October 28, 2013, a BANA employee named Sasha Rainey informed Plaintiff that she had taken over for Whitehead. *Id.* ¶ 73. Rainey indicated that she was submitting the extension request to Fannie Mae. *Id.* ¶ 74. Fannie Mae informed Plaintiff that the extension request submitted by BANA was incomplete. *Id.* ¶ 84.

On October 22, 2013, Plaintiff received notice (dated October 10) that servicing of the Loan would be transferred to Green Tree Servicing (now known, and referred to herein, as Ditech), effective November 1, 2013. *Id.* ¶ 70. When Ditech took over the loan in November 2013, it started immediate collection efforts. *Id.* ¶ 98. Ditech, through its trustee, scheduled a foreclosure sale in 2014, which was canceled. *Id.* ¶ 106. On August 4, 2014, Plaintiff sent BANA written notice purporting to rescind the Loan pursuant to Plaintiff's rights under the Truth in Lending Act. *Id.* ¶ 5. Plaintiff also sent copies of the letter to Ditech and its trustee, among others. *Id.* . By August 7, 2017, all parties affected by the rescission had received notice of it. *Id.* Neither BANA nor Ditech ever responded to the rescission notice. *Id.* ¶ 6.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994); *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1994). A claim should be dismissed "if, after accepting all well-pleaded allegations in the plaintiff's complaint as true . . . it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *see also Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001). In considering a motion to dismiss, "the material allegations of the complaint are taken as admitted," *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted), and the

court may consider exhibits attached to the complaint, *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F. 2d 1462, 1465 (4th Cir. 1991).

Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.*; *see also Bd. of Trs. v. Sullivant Ave. Props., LLC*, 508 F. Supp. 2d 473, 475 (E.D. Va. 2007). In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Nevertheless, while Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (the complaint "must be enough to raise a right to relief above the speculative level" to one that is "plausible on its face"); *see also Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). As the Supreme Court stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008), "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw a reasonable inference that the defendant is liable for the conduct alleged."

Fraud claims, however, are subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(b), which requires that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . ." These include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained" as a result. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). But "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A "lack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." *Harrison*, 176 F.3d at 783 n.5.

## III. ANALYSIS

Plaintiff asserts claims for violation of the Truth in Lending Act (Count I), fraud (against BANA) (Count II), breach of the implied covenant of good faith and fair dealing (Count III), breach of contract (Count VI), and violations of the Fair Debt Collection Practices Act (against Ditech) (Count V). Defendants now move to dismiss all of these claims against them, contending that Plaintiff has failed to plausibly state a claim in his First Amended Complaint.

### A. Truth in Lending Act

The Truth in Lending Act (the "TILA") "grants borrowers an unconditional right to rescind for three days," or "if the lender failed to satisfy the [TILA]'s disclosure requirements," the "'right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever comes first.'" *Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790, 792 (2015) (quoting 15 U.S.C. § 1635(f)); *see* 15 U.S.C. § 1635(a). Certain transactions are statutorily exempt from a borrower's rescission right, including "a transaction which constitutes a refinancing or consolidation (with no new advances) of the principal balance then due and any accrued and unpaid finance charges of an existing extension of credit by the same creditor secured by an interest in the same property." 15 U.S.C. § 1635(e)(2). "[A] borrower exercises her right of rescission by merely communicating in writing to her creditor her intention to rescind," but "to complete the rescission and void the contract . . . .[e]ither the creditor must acknowledge that the right of rescission is available and the parties must unwind the transaction amongst themselves, or the borrower must file a lawsuit so that the court may enforce the right to rescind."[1] *Gilbert v. Residential Funding LLC*, 678 F.3d 271, 277 (4th Cir.

---

[1] The procedures for unwinding the transaction are provided by the TILA:
> When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor

5

2012) (internal quotation marks and brackets in original omitted). "If and when a borrower files suit to complete a rescission, she must show not only that the TILA mandated disclosures were not made, but also that she has the ability to tender the proceeds of the loan to her creditor in return for the release of the security interest on her property." *Murphy Brown v. Gorman*, No. 1:15cv1265, 2016 WL 3702974, at *3 (E.D. Va. July 7, 2016), *aff'd sub nom. Brown v. Gorman*, 680 F. App'x 242 (4th Cir. 2017). "Section 1640(e) provides a one-year statute of limitations for the filing of a suit once a violation of TILA has occurred." *Gilbert*, 678 F.3d at 278. When the claim is based on a creditor's failure to recognize a borrower's exercising her rescission right, the violation occurs upon the earlier of the creditor's refusal to rescind the loan or twenty days after the plaintiff provided notice to the creditor with without a response. *See, e.g., id.*; *Frazile v. EMC Mortg. Corp.*, 382 Fed. App'x 833, 839 (11th Cir. 2010); *Bazemore v. U.S. Bank, N.A.*, 167 F. Supp. 3d 1346, 1358-59 (N.D. Ga. 2016), *aff'd*, No. 16-14868, 2017 WL 2889471 (11th Cir. July 7, 2017).[2]

Plaintiff's factual allegations fail to plausibly plead that his Loan was covered by TILA rather than exempt from it. In particular, he alleges that the Loan from BANA "served to refinance an existing BANA mortgage loan." First Am. Compl. ¶ 1. But refinancing loans from the same creditor are exempt from TILA to the extent that the new loan does not include a new advance. *See* 15 U.S.C. § 1635(e)(2). While Plaintiff does allege that the Loan includes an

---

shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value.
15 U.S.C. § 1635(b).
[2] This applies to all rescission-based TILA claims. To the extent that Section 1640(e) does not apply by its terms to a TILA claim seeking enforcement of a timely asserted rescission (as opposed to damages), it would nevertheless apply to any such claim because it is the most closely analogous federal statute. *See Jacques v. Chase Bank USA, N.A.*, No. CV 15-548-RGA, 2016 WL 423770, at *9 & n.10 (D. Del. Feb. 3, 2016), *aff'd*, 668 F. App'x 437 (3d Cir. 2016) (citing *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.*, 483 U.S. 143, 146-50 (1987)).

"advance," he does not plead whether that advance included money beyond that to pay off the prior loan that it refinanced. Plaintiff's First Amended Complaint also fails to plausibly allege that he has the ability to tender the over $300,000 proceeds from the Loan in order to unwind the transaction. Indeed, Plaintiff alleges that he is significantly past due on his loan payments, suggesting that he would not have the ability to rescind the transaction even assuming he had the right to do so. *See Murphy Brown v. Gorman*, 2016 WL 3702974, at *3. Finally, and in any event, Plaintiff's allegations make clear that any rescission-based claims are time barred. Plaintiff alleges that he notified BANA and Ditech of his rescission in an August 4, 2014 letter, and that every party affected by the rescission had received notice no later than August 7, 2014. Any TILA violation based on BANA or Ditech's refusal to recognize Plaintiff's rescission rights occurred no later than August 28, 2014. Because Plaintiff filed this action on October 31, 2015, more than one year after the latest TILA violation occurred, his TILA claims are time-barred and must be dismissed. For these reasons, Plaintiff has not plausibly stated a claim for a violation of TILA.

**B. Fraud**

Under Virginia law, six independent elements must be pled to state a claim for fraud: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Evaluation Research Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994). "The allegedly defrauded party's reliance must be reasonable." *Wells Fargo Bank, Nat. Ass'n v. Smith*, No. 3:10-cv-411, 2010 WL 4622176, at *2 (E.D. Va. Nov. 5, 2010) (citing *Hitachi Credit America Corp. v. Signet Bank*, 166 F.3d 614, 629 (4th Cir. 1999)). "A plaintiff cannot prove reasonable reliance where such reliance contradicts the express terms of the contract." *Grubb & Ellis Co. v.*

*Potomac Med. Bldg., LLC*, No. 1:08cv971GBL, 2009 WL 3175999, at *14 (E.D. Va. Sept. 30, 2009) (citing *Foremost Guar. Corp. v. Meritor Sav. Bank*, 910 F.2d 118, 126 (4th Cir. 1990)).

Plaintiff's fraud claim against BANA appears to be based on the statements allegedly made by BANA representatives, particular Whitehead, regarding his ability to extend the forbearance agreement for a second six-month period and Whitehead's and BANA's continued handling of Plaintiff's Loan during that year forbearance period. Plaintiff alleges that Whitehead told him that all he needed to do to secure the second six-month period of forbearance was notify Whitehead that he wished to extend the forbearance agreement but that in fact approvals from Fannie Mae were required to extend the forbearance beyond six months. First Am. Compl. ¶ 28. However, Plaintiff's allegations conflict with the express provisions of the forbearance agreement that Plaintiff signed, which stated that BANA would decide how to proceed at the end of the first six months in its "sole and absolute discretion." Plaintiff has therefore failed to allege facts that make plausible that he reasonably relied on Whitehead's alleged statement that he could obtain a six month extension of the forebearance agreement simply by asking for that extension. Accordingly, Plaintiff has failed to state a claim for fraud against BANA.

## C. Breach of the Implied Covenant of Good Faith (Count III) and Contract (Count VI)

Under Virginia law, the elements of a breach of contract claim are: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Navar, Inc. v. Fed. Bus. Council*, 784 S.E. 2d 296, 299 (Va. 2016) (internal quotation marks omitted). Plaintiff alleges that Defendants breached the forbearance agreement by failing: to inform him that it sold the Loan; to post his payments thereunder properly; to constrain negative credit reporting; and to provide him with a copy of the agreement. However, the terms of the

forbearance agreement, which Plaintiff signed on May 19, 2013 (and therefore received), do not contain any obligation to inform Plaintiff when or if BANA sold the loan; afford BANA discretion in determining how to apply Plaintiff's payments thereunder, and state explicitly that failure to make timely payments under the agreement, which were due on the 10th day of each month, could result in negative credit reporting. *See* [Doc. No. 28-1].[3]

Under Virginia law, the implied duty of good faith and fair dealing can be breached when a party exercises its contractual discretion in bad faith or exercises a contractual right dishonestly. *See Stoney Glen, LLC v. S. Bank & Tr. Co.*, 944 F. Supp. 2d 460, 465 (E.D. Va. 2013). Plaintiff's own allegations indicate that he did not make payments in accordance with these terms. *See* First Am. Compl. ¶ 31-32. Plaintiff claims that Defendants breached the implied duty of good faith and fair dealing by providing him with false information regarding the forbearance extension and his Loan. But these allegations, like those pertaining to his fraud claim, are inconsistent with the express terms of the forebearance agreement. Plaintiff has failed to allege facts that make plausible that BANA acted in violation of its obligation of good faith and fair dealing concerning the extension of his forbearance agreement for an additional six months. Accordingly, Plaintiff has failed to adequately allege that BANA breached the forbearance agreement's implied duty of good faith and fair dealing. Likewise, having failed to adequately allege a breach of BANA's duty of good faith and fair dealing, Plaintiff does not adequately allege that Ditech, by taking over as loan service on the Loan or otherwise, somehow breached, or was responsible for BANA's breach, of the duty of good faith and fair dealing. *See* Englert v. Nationstar Mortg., Inc., No. 1:15-CV-303-GBL-MSN, 2015 WL 9275662, at *3 (E.D.

---

[3] BANA attached a copy of forbearance agreement to its opposition to Plaintiff's motion for default judgment. Because the forbearance agreement is integral to Plaintiff's claims, and he does not challenge the authenticity of the agreement submitted by BANA, the Court may consider the actual forbearance agreement when deciding the Motions without converting them into motions for summary judgment. *See, e.g., E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).

9

Va. Dec. 18, 2015) ("Although the parties do not cite Virginia case law indicating whether a loan servicer may have contractual obligations to the mortgagor, in other jurisdictions a significant majority of courts have concluded loan servicers are not in privity of contract with mortgagors where the servicers did not sign a contract with the mortgagors or expressly assume liability. Those courts have consistently found that a servicer is not automatically in privity with a borrower where the servicer was not also the original lender. Rather, a borrower suing a loan servicer for breach of contract must establish their relationship and that the lender validly assigned some or all of its contractual obligations to the loan servicer.") (citations, alterations, and internal quotation marks omitted). Accordingly, Plaintiff has failed to state a claim against Ditech for violation of the duty of good faith and fair dealing.

**D. Violations of the Fair Debt Collection Practices Act (against Ditech) (Count V)**

Finally, Plaintiff alleges that Ditech violated the Fair Debt Collection Practices Act ("FDCPA") because it attempted to collect a debt that was not owed. This contention rests on the incorrect premise that Plaintiff had rescinded the Loan and therefore no longer owed payments on it.[4] Because the Loan was still in force when Ditech attempted to collect payments on it, Plaintiff has failed to state a claim against Ditech for violation of the FDCPA.

## IV. CONCLUSION

For the above reasons, it is hereby

---

[4] Plaintiff also alleges that BANA violated "RESPA (Regulation X) § 1024.38" (the Real Estate Settlement Procedures Act) based on its representative's lack of familiarity with the details of his loan, First Am. Compl. ¶ 94, and that each Defendant violated the Fair Credit Reporting Act by reporting false derogatory information, *id.* ¶ 103, although he does not set forth these claims as counts in his First Amended Complaint. The Court finds that he fails to state a claim for violations of either. There is no private right of action for the RESPA violations that Plaintiff alleges. *See, e.g., Agomuoh v. PNC Financial Services Group*, No. GJH-16-1939, 2017 WL 657428, at *10 (D. Md. Feb. 16, 2017). And his FCRA claim is based on the premise that he did not miss payments because he had rescinded the loan.

10

ORDERED that Defendant Green Tree Servicing LLC n/k/a Ditech Financial LLC's Motion to Dismiss [Doc. No. 19] be, and the same hereby is, GRANTED, and that the claims against it be, and the same hereby are, DISMISSED; and it is further

ORDERED that Defendant Bank of America, N.A.'s Motion to Dismiss Plaintiff's First Amended Complaint [Doc. No. 25] be, and the same hereby is, GRANTED and the claims against it, be, and the same, hereby are, DISMISSED.

The Clerk will forward a copy of the Order to Plaintiff, pro se, and the counsel of record and enter judgment in Defendants' favor pursuant to Fed. R. Civ. Pro. 58.

**This is a final order for purposes of appeal.** To appeal, Plaintiff must file a written Notice of Appeal with the Clerk of the Court within thirty (30) days of the date of this Order. A Notice of Appeal is a short statement stating a desire to appeal an order and identifying the date of the order Plaintiff wishes to appeal. Failure to file a timely Notice of Appeal waives Plaintiff's right to appeal this decision.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
October 6, 2017